**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CV-81451-RAR**
**(19-CR-80064-RAR)**

**MATTHEW TASSIN,**

      Movant,

v.

**UNITED STATES OF AMERICA,**

      Respondent.

_____/

**<u>ORDER DENYING 28 U.S.C. § 2255 MOTION TO VACATE</u>**

**THIS CAUSE** comes before the Court on Movant Matthew Tassin's *pro se* Motion to Vacate under 28 U.S.C. § 2255 ("Mot."), [ECF No. 1], and "Memorandum of Law" ("Memo."), [ECF No. 1-1]. The Government filed a Response to the Motion. *See* Response ("Resp.") [ECF No. 18]. Having reviewed the pleadings, Movant's criminal docket, and the applicable law, the Court finds that Movant has failed to demonstrate he is entitled to relief and **DENIES** the instant Motion.

**<u>PROCEDURAL HISTORY</u>**

"In January 2019, an undercover agent working with the FBI Child Exploitation Task Force was on 'KiK,' an online social networking chat application, in a chatroom by and for people who wanted to trade and access child pornography." *United States v. Tassin*, No. 21-12017, 2022 WL 2458005, at *1 (11th Cir. July 6, 2022), *cert. denied*, 143 S. Ct. 413 (2022). While in this chatroom, the agent observed a user named "Mike T" post a hyperlink to a website containing "images and videos of child pornography." *Id.* Law enforcement identified "Mike T" as Movant and executed a search warrant at Movant's home. *See id.* A forensic review of Movant's phone

identified dozens of images and videos of child pornography. *See id.* Movant also admitted to an FBI agent that "he shared and received child pornography," that he generally searched for images containing "girls 12 years old and younger," and that he was "addicted" to child pornography. *Id.* Based on this conduct, a grand jury indicted Movant with transporting child pornography (Count 1), distributing child pornography (Count 2), and possessing child pornography (Count 3). *See* Indictment, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. Apr. 23, 2019), ECF No. 6. Movant hired attorney I. Scott Skier to represent him in the proceedings before this Court. *See* Notice of Appearance, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. Apr. 21, 2019), ECF No. 4.

On June 6, 2019, Movant entered into a plea agreement with the Government. *See* Plea Agreement, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. June 6, 2019), ECF No. 16. As part of the agreement, Movant "pled guilty to Counts 2 and 3 [of the Indictment], in exchange for the dismissal of Count 1." *Tassin*, 2022 WL 2458005, at *1. Movant admitted to being "Mike T," to possessing hundreds of images and videos of child pornography which depicted "prepubescent girls engaging in masturbation, vaginal, and oral sex," and to distributing these images to various users on KiK. *See* Factual Proffer, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. June 6, 2019), ECF No. 17 at 4–5. During his change of plea hearing, Movant swore under oath that he had "had never been treated for any mental illness or alcohol addition," that he was not "under the influence of any drugs or alcohol" at the time of his change of plea hearing, and that the Government possessed enough facts to prove each and every element of the crimes Movant was pleading guilty to. *Tassin*, 2022 WL 2458005, at *2. Having found that Movant "was fully competent and capable of entering into the plea agreement and aware of the nature of the charges and consequences of his plea," the Court accepted his guilty plea. *Id.*

The United States Probation Office prepared a presentence investigation report ("PSI") for Movant, which calculated a total offense level of 37 and a criminal history category of I for an advisory guidelines range of 210 to 262 months. *See id.* at *3; *see also* PSI, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. Sept. 26, 2019), ECF No. 35 ¶ 79. Mr. Skier did not file any objections to the PSI, but made an *ore tenus* motion for a downward variance based on Movant's lack of criminal history, his cooperation with the Government, and his family support. *See Tassin*, 2022 WL 2458005, at *3. The Court found that a variance was not warranted, despite Movant's cooperation and lack of criminal history, "because (1) Tassin preyed on children; (2) Tassin had 123 child pornography videos, including bondage and victims under the age of 5; and (3) two of the victims were identified by the National Center for Missing and Exploited Children." *Id.* The Court adjudicated Movant guilty of Counts 1 and 2, imposed a total sentence of 240 months followed by 15 years of supervised release, and imposed $10,000.00 in restitution. *See* Amended Judgment, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. Oct. 4, 2019), ECF No. 41.

On October 22, 2020, Movant filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255. *See* First Motion to Vacate, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. Oct. 22, 2020), ECF No. 46. Movant argued, among other things, that Mr. Skier "failed to file a notice of appeal" despite being explicitly instructed by Movant to do so. *See id.* at 4. After referring the matter to a magistrate judge, the Court granted in part Movant's § 2255 motion so that Movant could "pursue an out-of-time appeal consistent with the procedure set forth in *United States v. Phillips*, 225 F.3d 1198 (11th Cir. 2000)" and dismissed all other claims raised in the motion without prejudice. Order Adopting Report and Recommendation, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. Apr. 2, 2021), ECF No. 54 at 2. Movant, who was now represented by the Federal Public Defender's Office, attempted to file new objections to the PSI, but the Court

found that Movant could not raise new sentencing arguments in a *Phillips* resentencing.  *See* *Tassin*, 2022 WL 2458005, at *4.  Nevertheless, and "in [an] abundance of caution," the Court found that it would have denied Movant's new objections to the PSI on the merits if they could have been properly raised.  *See id.* at *4–5.  The Court then reimposed the same 240-month sentence.  *See* Second Amended Judgment, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. June 9, 2021), ECF No. 65.

Movant appealed his conviction and sentence to the United States Court of Appeals for the Eleventh Circuit.  Movant brought five arguments on appeal: (1) the Court erred "by not *sua sponte* inquiring into [Movant's] competence"; (2) the Court "erred by determining that it lacked authority to consider new sentencing objections" during Movant's resentencing; (3) the Court imposed "a procedurally unreasonable sentence because it applied two unnecessary enhancements"; (4) the Court imposed a "substantively unreasonable sentence"; and (5) the Court "erred by applying certain special conditions of supervised release."  *Tassin*, 2022 WL 2458005, at *1.  The Eleventh Circuit affirmed Movant's conviction on July 6, 2022.  *See id.* at *10.

Movant filed a petition for writ of certiorari with the United States Supreme Court, but the Court denied that petition on November 7, 2022.  *See Tassin*, 143 S. Ct. at 413.  Movant timely filed the instant Motion to Vacate within one year of the Supreme Court denying certiorari on October 29, 2023.[1]  *See* Mot. at 13; *see also Clay v. United States*, 537 U.S. 522, 527 (2003) (holding that § 2255's limitation period begins to run "when this Court . . . denies a petition for writ of certiorari").

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing."  *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).  "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it."  *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

## STANDARD OF REVIEW

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on a final judgment, pursuant to 28 U.S.C. § 2255, are extremely limited.  A prisoner is only entitled to relief under § 2255 if the court imposed a sentence that: (1) violated the Constitution or laws of the United States; (2) exceeded its jurisdiction; (3) exceeded the maximum authorized by law; or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).  Thus, relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)).  If a court finds a claim under § 2255 valid, the court "shall vacate and set the judgment aside shall discharge the prisoner or resentence him or grant a new trial or correct the sentence." 28 U.S.C. § 2255(b).  The § 2255 movant "bears the burden to prove the claims in his § 2255 motion." *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015).

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e."  U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To prevail on a claim of ineffective assistance of counsel, the movant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88).  "Claims of ineffective assistance of appellate counsel are

governed by the same standards applied to trial counsel under *Strickland*." *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009).

Regarding the deficiency prong, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take" during the proceedings. *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). If "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel did not perform deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong, "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If a postconviction movant has pled guilty to the underlying offenses, the prejudice prong is modified so that the movant is instead required to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## **ANALYSIS**

Movant's motion to vacate is divided into three grounds for relief: ineffective assistance of trial counsel (Ground One), constructive amendment of Count 3 of the Indictment (Ground Two), and ineffective assistance of appellate counsel (Ground Three). *See* Mot. at 4–7. Ground One of the Motion is further divided into twelve subclaims. *See* Memo. at 3–4. After carefully reviewing all of Movant's arguments, the Court agrees with the Government that none of them have merit.

## I.   Ground One: Ineffective Assistance of Trial Counsel

In Ground One, Movant identifies twelve alleged instances of ineffective assistance of trial counsel on the part of Mr. Skier.  Movant blames Mr. Skier for: (1) failing to "investigate" Count 1; (2) failing to "investigate" Count 3; (3) failing to challenge "illegally obtained statements"; (4) failing to challenge "perjured statements"; (5) failing to recognize and challenge an illegal "two-step" interrogation; (6) failing to investigate § 2G2.2 of the Sentencing Guidelines; (7) failing to challenge "illegal searches"; (8) failing to "recognize [Movant's] indigent status"; (9) failing to challenge the restitution amount; (10) failing to seek a competency evaluation for Movant; (11) performing so poorly that his representation of Movant amounted to the constructive denial of counsel under *United States v. Cronic*, 466 U.S. 648 (1984); and (12) making so many errors that their cumulative effect prejudiced Movant.  *See* Mot. at 4; Memo. at 3–4.  The Court will address, in turn, each of the twelve claims Movant explicitly enumerated in his Motion and Memorandum of Law, and then discuss any subclaims therein.

### A.   Failure to Investigate Count 1

Count 1 of Movant's Indictment charged Movant with "knowingly transport[ing] [a] visual depiction [of a minor engaged in sexually explicit conduct], using any means and facility of interstate and foreign commerce, by any means, including by a computer," in violation of 18 U.S.C. § 2252(a)(2).  Indictment, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. Apr. 23, 2019), ECF No. 6 at 1.  Movant argues that he never "knowingly transported a visual depiction" of anything because he merely posted a hyperlink to a website which would eventually lead a viewer to depictions of child pornography.  *See* Memo. at 5 ("Petitioner argues that he did not transport child pornography because a plain-text hyperlink does not contain 'data . . . capable of

conversion into a visual image.'"). He therefore blames trial counsel for failing to file a motion to dismiss Count 1 on this basis. *See id.* at 6.

The Government responds that counsel's performance was not deficient and that, in any event, Movant was not prejudiced because Count 1 was dismissed as a condition of his plea deal. *See* Resp. at 24–25. The Court agrees with both arguments. Federal law's definition of a "visual depiction" includes "data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format[.]" 18 U.S.C. § 2256(5). Although the Court was unable to find any case holding that a hyperlink meets the definition of a "visual depiction" as set forth in § 2256(5), the Eleventh Circuit has held that sharing links "which would permit the user to retrieve pornographic images" from another website is sufficient to show that the defendant knowingly transported child pornography. *United States v. Hair*, 178 F. App'x 879, 884 (11th Cir. 2006); *see also United States v. McCoy*, 678 F. Supp. 2d 1336, 1343–44 (M.D. Ga. 2009) (same); *United States v. Rivenbark*, 748 F. App'x 948, 954 (11th Cir. 2018) ("Although we need not address it here, crediting Rivenbark's technical argument about the hyperlink versus actual pornography would permit individuals sharing child porn to avoid prosecution simply by using third-party virtual storage to remain one step removed from the illicit materials.").[2] Since

---

[2] In *United States v. Navrestad*, 66 M.J. 262 (C.A.A.F. 2008), the United States Court of Appeals for the Armed Forces opined that a hyperlink might not meet the definition of a "visual depiction" since it does not "start or end as pornography" and is "simply a shortcut to a particular web address." *Id.* at 266. The Court does not put stock into the *Navrestad* opinion for two reasons. *First*, the Court of Appeals for the Armed Forces has since limited *Navrestad* to the specific facts of that case, where "there was no indication the accused [in *Navrestad*] exercised the required dominion or control over the contraband images" that were available by accessing the hyperlink. *United States v. King*, 78 M.J. 218, 222 (C.A.A.F. 2019). Here, Movant never alleges that he lacked "dominion or control" over the pornographic images shared via the hyperlink; in fact, the evidence shows that Movant possessed and distributed hundreds of images and videos of child pornography. *See Tassin*, 2022 WL 2458005, at *1. *Second*, *Navrestad* was decided before Congress broadened § 2256(5)'s definition of a "visual depiction" to include "data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format." Protect our Children Act of 2008, Pub. L. No. 110-401, § 302, 122 Stat. 4229, 4242 (2008). Since the definition of "visual depiction" has changed since *Navrestad* was decided, the Court is skeptical that it

any attempt to dismiss Count 1 on this ground would have been unsuccessful, trial counsel did not perform deficiently "for failing to perform a futile act[.]"  *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017).

Moreover, Movant could not have been prejudiced because, by pleading guilty, the Government agreed to dismiss Count 1.  Since Movant pled guilty, he can only show prejudice if "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59.  As the Government accurately observes, since "Count 1 was dismissed and Movant knew in advance of the plea it would be dismissed, it could not have caused him to not plead guilty."  Resp. at 25.  Since Movant was plainly willing to plead guilty to Counts 2 and 3 of the Indictment (but not Count 1), the Court is unpersuaded that Movant would have insisted on going to trial on these other counts merely because defense counsel successfully moved to dismiss Count 1 earlier.  *See Hill*, 474 U.S. at 59.

### B.  *Failure to Investigate Count 3*

Count 3 of the Indictment charged Movant with possessing a cellular phone "which contained [a] visual depiction" of a "minor engaged in sexually explicit conduct," specifically "a prepubescent minor and a minor who had not attained twelve years of age," in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2).  Indictment, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. Apr. 23, 2019), ECF No. 6 at 2–3.  Movant contends there was a "fifth element" to this offense that was never discussed during his plea hearing or in his factual proffer: proof that Movant "intended to possess prepubescent child pornography."  Memo. at 7–8.  The Government counters

---

retains even persuasive value.  *See Navrestad*, 66 M.J. at 271 (Effron, C.J., dissenting) ("Unlike a website address printed in the newspaper describing where to find child pornography, a hyperlink provides a means to transmit the content of the website to the user's computer.  The recipient's ability to access and use images transmitted by hyperlink is functionally indistinguishable from the ability to access and use images transmitted as individually saved files.").

that Movant admitted in his factual proffer "that the images and videos found on [his cell phone] 'included prepubescent girls engaging in masturbation, vaginal, and oral sex.'"  Resp. at 26 (quoting Factual Proffer, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. June 6, 2019), ECF No. 17 at 4).

Contrary to Movant's argument, § 2252(a)(4)(B) only has four elements: (1) the defendant possessed "matter that involved the use of minors engaged in sexually-explicit conduct"; (2) the visual depiction "had been transported in interstate commerce"; (3) "the defendant knew [the visual depiction] portrayed sexually-explicit conduct"; and (4) the defendant "knew that the material depicted minors engaged in such conduct."  *United States v. Merino-Balderrama*, 146 F.3d 758, 761 (9th Cir. 1998) (citing *United States v. X-Citement Video*, 513 U.S. 64, 78 (1994)); *accord United States v. Alfaro-Moncada*, 607 F.3d 720, 733 (11th Cir. 2010).  However, because Movant was also charged under 18 U.S.C. § 2252(b)(2), two of § 2252(a)(4)(B)'s four elements were modified so that § 2252(b)(2)'s sentencing enhancement would apply.  The Government was now required to show that the minors depicted were either prepubescent or "had not attained 12 years of age" (instead of just proving that the material depicted minors of any age) and that Movant knew that the minors depicted were prepubescent or younger than 12 years old (as opposed to proving that the defendant knew they were minors generally).  *See, e.g.*, *United States v. Hood*, No. 14-CR-0215, 2015 WL 877753, at *4 (N.D. Ga. Mar. 2, 2015) (citing 18 U.S.C. §§ 2252(a)(4)(B), (b)(2)) (listing the elements).  Contrary to Movant's arguments, then, § 2252(b)(2) did not add a "fifth element" but instead modified the usual first and fourth elements of § 2252(a)(4)(B).

Movant's factual proffer dutifully listed these four elements, and Movant admitted that the Government had sufficient evidence that it could have proven each one of them "beyond a

reasonable doubt had this case gone to trial." Factual Proffer, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. June 6, 2019), ECF No. 17 at 5–6.  Movant also admitted to knowing that many of the girls depicted in the images he possessed were 12 years old and younger.  *See id.* at 3. Movant tries to backtrack from his factual proffer, claiming that he had "raised concerns [with Mr. Skier] over being mis-quoted . . . about the ages of the girls depicted[,]" Memo. at 7, but Movant swore under oath that everything in the factual proffer was "embarrassingly" true and that he would not change or correct anything about the factual proffer.  *See* Change of Plea Hr'g Tr., *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. Nov. 20, 2020), ECF No. 48 at 24:4–10.[3]  The sworn statements Movant made under oath during his change of plea hearing "constitute a formidable barrier in any subsequent collateral proceedings" and are entitled to "a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Philpot v. United States*, No. 23-CV-60837, 2023 WL 4560878, at *7 (S.D. Fla. July 17, 2023) ("Movant cannot disavow his previous statements [made] under oath now that it is convenient for him to do so.").

In short, Movant admitted in his factual proffer that the Government could have proven all four (not five) elements of § 2252(a)(4)(B) and that Movant knew the pornographic images he possessed depicted prepubescent girls.  For these reasons, counsel could not have been ineffective for failing to file a meritless motion to dismiss Count 3.[4]

---

[3]  Movant's claim that this admission was based on a "misquote" is also refuted by the record.  The Court reviewed Movant's statement to the FBI, which was conventionally filed with the Clerk of Court, [ECF No. 21], and agrees with the Government that Movant clearly admitted to knowing that the pornography he possessed depicted girls 12 years old and younger.  *See* Resp. at 27.

[4]  Movant's arguments concerning the applicability of § 2G2.2(b)(2) of the Sentencing Guidelines will be addressed later in this Order.

### C. *Failure to Challenge Admissibility of Statements*

Movant next argues that Mr. Skier "provided ineffective assistance where he failed to investigate the admissibility of: 1) Petitioner's phone password [and] contents; 2) Petitioner's pre-*Miranda* statements; [and] 3) Petitioner's post-*Miranda* statements" during the FBI's search of Movant's home on April 15, 2019. Memo. at 12. Movant argues that all of these statements should have been suppressed because the FBI agents failed to properly apprise him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *See id.* at 13–14, 16. "[W]here a petitioner faults his lawyer for failing to pursue a motion to suppress prior to entering a plea," the petitioner must show that the putative suppression motion "would have affected the outcome of the case had the defendant rejected the plea and proceeded to trial." *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348 (11th Cir. 2015). Movant will not be entitled to relief unless he can show that a motion to suppress would have been successful and that the outcome of his trial proceedings would have been different if there was a successful motion to suppress. *See Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006).

When reviewing a § 2255 motion, the Court must presume that the Movant's allegations are true unless they are "affirmatively contradicted by the record" or are "patently frivolous." *Aron v. United States*, 291 F.3d 708, 715 n.6 (11th Cir. 2002). Thus, the Court must credit Movant's account of the April 15, 2019 search unless there is contradictory evidence in the record. FBI agents executed a search warrant at Movant's home during the early morning hours of April 15, 2019. *See* Factual Proffer, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. June 6, 2019), ECF No. 17 at 2–3. Once the FBI announced their presence at Movant's home, they breached the front door and then handcuffed and removed Movant from the home while wearing only his "boxer shorts." *See* Movant's Affidavit ("Aff."), [ECF No. 1-2], ¶¶ 3–6; Movant's Letter to Mr. Skier,

[ECF No. 18-11], at 1.[5]  Movant was placed on his back porch where he was uncuffed and given clothing to dress himself.  *See* Aff. ¶¶ 7–8; Pictures of Movant, [ECF No. 18-8], at 1–2 (showing Movant was fully clothed and uncuffed during the search of his home).  Although Movant was told that he was not under arrest and was free to leave, he was watched at all times by a law enforcement officer.  *See* Aff. ¶ 9.  Movant was allowed to enter his home to use the restroom but was escorted and watched by an officer.  *See id.* ¶¶ 28–29.

An agent eventually approached Movant and "demanded" that he unlock his phone and provide the phone's passcode.  *Id.* ¶¶ 11–12.  Movant did so under protest since he felt that he was obligated to do so because of the search warrant.  *See id.* ¶¶ 11–14.  Special Agent Crotty then began to speak to Movant "about the KiK application and child pornography."  *Id.* ¶ 15.  Movant answered some questions but then requested an attorney.  *See id.* ¶ 16; Factual Proffer, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. June 6, 2019), ECF No. 17 at 3.  Several minutes later, Movant asked a different law enforcement agent about his uniform and made more statements after being questioned.  *See* Aff. ¶¶ 18–21; *but see* Agent Wilson Report, [ECF No. 18-7], at 1 (reporting that all of Movant's statements during this interaction were "spontaneous").  Agent Crotty returned and asked for a recorded statement, but Movant declined.  *See id.* ¶¶ 23–26.  At 7:01 a.m., Movant was advised of his *Miranda* rights and signed a waiver agreeing to speak to the agents.  *See* Advice of Rights, [ECF No. 18-10], at 1.[6]  After the *Miranda* warnings were given,

---

[5]  There is a conflict in Movant's own allegations as to the behavior of the FBI agents when he was being removed.  In his affidavit, Movant alleges that he was held at gunpoint and that at least one officer "screamed" at him.  *See* Movant's Affidavit, [ECF No. 1-2], ¶¶ 6, 10.  However, Movant previously provided an unsigned and undated letter to Mr. Skier which does not mention that Movant was held at gunpoint or screamed at—indeed it omits the most salacious allegations found in Movant's affidavit.  *See* Movant's Letter to Mr. Skier, [ECF No. 18-11], at 1–2.  The Court agrees with the Government that, in light of this letter, Movant's affidavit contains "embellished facts" that are affirmatively contradicted by Movant's prior statements to Mr. Skier.  Resp. at 41.

Movant admitted that he watched, possessed, and distributed child pornography on KiK.  *See* Factual Proffer, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. June 6, 2019), ECF No. 17 at 3–4.

Movant argues that the FBI agents should have immediately read Movant his *Miranda* warning upon their arrival since he was "in custody" from the very beginning.  *See* Memo. at 16, 18–19.  Movant also alleges that his post-*Miranda* statements should also be suppressed, despite the warning, because it was tainted by prior "police coercion."  *Id.* at 25.  Law enforcement is required to provide *Miranda* warnings during a custodial interrogation.  *See Bowen v. Sec'y, Fla. Dep't of Corr.*, 92 F.4th 1328, 1334 (11th Cir. 2024) ("[T]he Supreme Court held in *Miranda v. Arizona* that the government may not use statements offered while a suspect was in 'custodial interrogation' unless that suspect is informed of his rights." (citing *Miranda*, 384 U.S. at 444)).  The converse is also true: "*Miranda* does not require a warning, or otherwise impose restrictions, anytime police speak with someone—even if that someone is a suspect."  *Id.*  A defendant "is in custody for the purposes of *Miranda* when there has been a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'"  *United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).  The "test" for determining whether a suspect is in custody is purely objective, it "depends on whether under the totality of the circumstances, a reasonable man in [Movant's] position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave."  *United*

---

[6]  Movant tries to cast doubt on the specific time he was read his *Miranda* rights.  First, in his affidavit, Movant claims that he was not given *Miranda* warnings until after 8:30 a.m. and more than two-and-a-half hours of questioning.  *See* Aff. ¶¶ 31–33.  This, of course, is contradicted by both Movant's *Miranda* waiver and the letter he wrote to Mr. Skier.  *See* Advice of Rights, [ECF No. 18-10], at 1; Movant's Letter to Mr. Skier, [ECF No. 18-11], at 1–2.  Second, Movant argues that the time and date on the Advice of Rights form are inconsistent and therefore cannot be trusted.  *See* Memo. at 24.  The Court agrees with the Government that, given the rest of the evidence in the court record, "the top of the *Miranda* card which indicates a date and time of April 14, 2019 at 7:01 p.m." is an obvious scrivener's error.  Resp. at 39.

*States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006) (cleaned up).  The Eleventh Circuit has instructed district courts to consider a variety of factors under this test, such as "whether the officers brandished weapons, touched the suspect, . . . used language or a tone that indicated that compliance with the officer could be compelled, as well as the location and length of the detention."  *United States v. Luna-Encinas*, 603 F.3d 876, 881 (11th Cir. 2010) (quoting *Street*, 472 F.3d at 1309).

Movant relies on the following facts to show he was in custody: he was initially handcuffed by law enforcement when they arrived, he was supervised at all times by a law enforcement officer, and he did not have his personal effects (such as his shoes, keys, or wallet) which would have allowed him to leave his home if he wanted to.  *See* Memo. at 18–20.  The Government responds that a reasonable person in Movant's position would have "understood he was free to leave or terminate the interview at any time."  Resp. at 34.  Upon reviewing the applicable case law, along with the totality of the circumstances as alleged by Movant, the Court finds that Movant was not in custody prior to being given his *Miranda* warnings.

To begin, Movant was in his own home the whole time, and "courts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings, such as the suspect's home."  *Brown*, 441 F.3d at 1348 (quoting *United States v. Ritchie*, 35 F.3d 1477, 1485 (10th Cir. 1994)).  In addition, Movant admits that the agents told him that he "was not under arrest and was free to leave," Memo. at 19, which is strong evidence that Movant was not "in custody" while his home was being searched.  *See Brown*, 441 F.3d at 1347 ("Unambiguously advising a defendant that he is free to leave and is not in custody is a powerful factor in the mix, and generally will lead to the conclusion that a defendant is not in custody[.]").  Although there were several law enforcement officers at Movant's home executing a search

warrant, including one who was observing Movant, their presence alone does not mean Movant was "in custody."  *See Luna-Encinas*, 603 F.3d at 881 ("We previously have explained, however, that although a reasonable person in the defendant's position may feel constrained not to leave the scene of a police encounter at a particular moment—and thus may be deemed to have been 'seized' by law enforcement—he will not necessarily be considered in 'custody' for Fifth Amendment purposes." (citing *Street*, 472 F.3d at 1310)); *see also United States v. Matcovich*, 522 F. App'x 850, 852 (11th Cir. 2013) (holding that a suspect was not in custody even though his home was a "police-dominated atmosphere" where suspect "was not allowed to go to his bedroom to retrieve his cigarettes" and was watched when he went to the bathroom); *United States v. Crews*, No. 13-CR-230, 2014 WL 5690448, at *5 (M.D. Fla. Nov. 4, 2014) ("The fact that Defendant was physically detained and handcuffed at gun point upon the officers' initial entry into his apartment to execute the search warrant does not necessitate a finding that Defendant was under arrest or in custody.").  Finally, the mere fact that Movant did not have ready access to his shoes, keys, wallet, or other personal effects does not mean he was in custody.  *See Brown*, 441 F.3d at 1349 ("The fact the police confiscated his shoes, standing alone, cannot convert what is a non-custodial situation into a custodial arrest[.]"); *see also United States v. Bhatt*, No. 14-CR-00313, 2015 WL 13736218, at *6–7 (N.D. Ga. Oct. 19, 2015) (finding suspect without wallet or keys was not in custody since "there is no testimony or evidence" the suspect ever asked to retrieve them).  Based on the foregoing, the Court finds that Movant was never in custody.

Movant also argues that he invoked his right to counsel before he was given his *Miranda* warnings, so law enforcement was precluded from engaging with him again until after he received counsel.  *See* Memo. at 23 ("Petitioner asserts that he never showed an interest in re-initiating the interview . . . [but] the same officer, Agent Crotty, continued the interview."); *see also* Aff. ¶ 16

("I declined to speak further and asked for an attorney.").  But, as the Court just discussed, Movant was not "in custody" when he first requested an attorney, so his rights under *Miranda* had not yet attached.  *See Bowen*, 92 F.4th at 1334 ("[*Miranda*'s] protections apply only in custodial interrogation.").  Because Movant was not permitted to "invoke his *Miranda* rights anticipatorily," law enforcement was not required to respect Movant's request for a lawyer until he was in custody for Fifth Amendment purposes.  *McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991).[7]

However, even if Movant was in custody, the Court also finds that Movant was not prejudiced by counsel's failure to file a motion to suppress Movant's statements because it would have had no effect on these proceedings.  For instance, Movant says that law enforcement's request for his phone passcode was invalid under the Fifth Amendment so any incriminating evidence found on his phone should have been suppressed as fruit of the poisonous tree.  *See* Memo. at 16.  This argument ignores that law enforcement already had a search warrant allowing them to seize and search Movant's cell phone <u>before</u> Movant was asked to provide the phone's passcode.  *See* April 11, 2019 Search Warrant, [ECF No. 23-1], at 31 (authorizing the search and seizure of "[c]omputers and electronic mobile devices and electronic storage media including . . . cellular telephones" that may be used to "distribute, possess, or receive child pornography").  Under the "inevitable discovery doctrine," the Government will not be penalized if it can "demonstrate that before the unlawful activity occurred, it was actively pursuing the lawful means that would have rendered discovery inevitable."  *McKathan v. United States*, 969 F.3d 1213, 1232 (11th Cir. 2020).  Since the Government "actively pursued" (and obtained) a lawful search warrant for Movant's

---

[7]  The Government correctly distinguishes this case from *Tukes v. Dugger*, 911 F.2d 508 (11th Cir. 1990).  *See* Resp. at 37 n.6.  In *Tukes*, the Eleventh Circuit opined (in dicta) that law enforcement could not "refuse to provide a lawyer on the ground that the suspect is not actually in custody" <u>after</u> the police had already told the suspect that "he had the right to an appointed lawyer."  *Id.* at 516 n.11.  Movant had not been apprised of his right to an attorney when he first asked for one, so the FBI agents never misled Movant into believing "that no request for counsel would be honored" after they had given him *Miranda* warnings.  *Id.*

phone before it asked Movant for the phone's password, the Government would have accessed the phone—and its incriminating contents—even if Movant refused to provide the password. *United States v. Delva*, 922 F.3d 1228, 1245 (11th Cir. 2019); *see also United States v. Coleman*, 554 F. Supp. 3d 1124, 1157 (D.N.M. 2021) (applying inevitable discovery doctrine where "federal agents would have and could have discovered the contents of the Galaxy cell phone evidence pursuant to a valid warrant").

Movant's statements to police (both pre- and post-*Miranda*) were also surplusage, so Movant would have still pled guilty if the statements he made were suppressed. Even if Movant had stayed totally silent during the search of his home, the Government would have legally searched and seized his cell phone and personal computer. *See* April 11, 2019 Search Warrant, [ECF No. 23-1], at 31. Movant's cell phone contained "hundreds of images and dozens of videos of child pornography" and "revealed hundreds of communications [Movant] had with other KiK users" to facilitate the "sending and receiving of child pornography videos." Factual Proffer, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. June 6, 2019), ECF No. 17 at 4. Movant's cell phone also showed that "he engaged in a one-on-one chat with another user" on KiK and that Movant sent this user "three (3) child pornography videos of a 12–13 year old girl being vaginally penetrated by an adult male." *Id.* Movant's personal computer contained similar images of child pornography. *See id.* at 4–5. It goes without saying that the Government still would have had overwhelming evidence that Movant possessed and distributed child pornography, even if every single word Movant had ever said was suppressed. Based on this evidence, Movant "cannot credibly contend that he would have changed his decision to plead guilty" if counsel filed a successful motion to suppress his statements because there was still "overwhelming evidence to show that [the Government] would have easily [proven Movant's guilt]." *United States v. Bates*,

960 F.3d 1278, 1296 (11th Cir. 2020); *see also Arvelo*, 788 F.3d at 1348 ("[A] lawyer's performance only falls outside the range of competence demanded of counsel if she did not pursue a motion to suppress that would have affected the outcome of the case had the defendant rejected the plea and proceeded to trial.").

### D.  Failure to Challenge Perjured Statements

Movant next argues that trial counsel failed to challenge "perjured statements" that were "modified to serve the Government's interests."  Memo. at 26.  Movant says that the Government purposely misquoted him in an effort to enhance Movant's sentence by showing Movant collected "pre-pubescent material."  *Id.* at 27.  Movant also claims that the Government "filed an addendum to the PSI . . . which attributed material to the petitioner that he was unaware of and would have objected to if he had the opportunity."  *Id.* at 28; Second Addendum to PSI, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. Sept. 26, 2019), ECF No. 35 at 1 ("[A] digital examination of the defendant's cell phone yielded 123 child pornography videos; 21 child pornography images, 3 child pornography videos that were over five minutes in duration; 1 video containing child pornography bondage and 2 videos of child pornography where the victims are under the age of five.").

This claim is frivolous.  As the Court previously discussed, Movant admitted—both in his interview with the FBI and again in his factual proffer—that he possessed pornographic images of pre-pubescent girls.  *See* Factual Proffer, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. June 6, 2019), ECF No. 17 at 3.  Movant also agreed that his cell phone contained "hundred [sic] of images and dozens of videos of child pornography."  *Id.* at 4.  Movant even had the opportunity to correct any part of his factual proffer during his plea colloquy he felt was inaccurate or misleading but instead confirmed that everything in it was true.  *See* Change of Plea Hr'g Tr., *United States v.*

*Tassin*, No. 19-CR-80064 (S.D. Fla. Nov. 20, 2020), ECF No. 48 at 24:4–10.  Movant is bound by these sworn answers.  *See Blackledge*, 431 U.S. at 74.

### E.  Failure to Challenge "Two-Step" Interrogation

Movant argues that counsel should have filed a motion to suppress based on law enforcement's alleged use of an illegal "two-step" interrogation.  A "two-step" interrogation occurs when law enforcement intentionally withholds "*Miranda* warnings until after interrogating and drawing out a confession" and then reads the suspect his *Miranda* rights so he can repeat the confession that was originally obtained in violation of *Miranda*.  *See Missouri v. Seibert*, 542 U.S. 600, 610–12 (2004).  According to Justice Kennedy's concurrence in *Seibert*, which is the controlling opinion, suppression is only warranted if "an officer employs a strategy of deliberately questioning an in-custody suspect without any *Miranda* warnings in order to get a confession, planning to later warn the suspect and get him to repeat his confession[.]"  *Street*, 472 F.3d at 1314 (citing *Seibert*, 542 U.S. at 621 (Kennedy, J., concurring)).  Movant asserts that a two-step interrogation applies here because he "asserted his *Miranda* rights" but was later forced to repeat the same statement in a post-*Miranda* interview.  Memo. at 31.

The Court already found, however, that Movant was not "in custody" when he was initially questioned, so law enforcement could not have conducted a "two-step" interview by having Movant repeat a confession that was first extracted during an illegal custodial interrogation.  *See United States v. Douglas*, 688 F. App'x 658, 663 (11th Cir. 2017) ("As a general rule, the existence of a pre-*Miranda* statement does not require the suppression of a post-warning statement that was knowingly and voluntarily made." (citing *Oregon v. Elstad*, 470 U.S. 298, 309, 318 (1985))); *United States v. Riquene*, 552 F. App'x 940, 943 (11th Cir. 2014) ("Riquene's reliance on [*Seibert*] is misplaced. . . . Riquene was not in custody before he was advised of his rights under *Miranda*.").

Moreover, even if there was an illegal "two-step" interrogation, Movant was not prejudiced by counsel's failure to file a motion to suppress because it did not affect the quality of the Government's evidence proving Movant's guilt.  *See Bates*, 960 F.3d at 1296; *Arvelo*, 788 F.3d at 1348.

### F.  Failure to Challenge § 2G2.2

Movant raises a bevy of challenges related to § 2G2.2 of the Sentencing Guidelines. Movant alleges that: (1) counsel failed to argue that § 2G2.2's history and current application render disproportionately severe sentences, *see* Memo. at 33, 36; (2) Movant's plea was not knowing and voluntary since he was misinformed about the punitive nature of § 2G2.2, *see id.* at 37; (3) counsel failed to investigate Movant's personal background and provide mitigating evidence, *see id.* at 39–40; (4) the specific enhancements of §§ 2G2.2(b)(2), (b)(3)(B), and (b)(4)(A) do not apply, *see id.* at 42; and (5) counsel failed to argue that Movant's sentence was "greater than necessary" under 18 U.S.C. § 3553(a), *id.* at 47.  These arguments are all meritless.

*First*, the alleged "harshness" of § 2G2.2 has been litigated *ad nauseum* to no avail. Movant is correct that the Sentencing Commission, lawyers, and even some judges have criticized the text and application of § 2G2.2 since it subjects a majority of offenders to harsh enhancements. *See* Memo. at 34–36.  But, as the Eleventh Circuit has held, these criticisms "do[ ] not render the non-production child pornography guidelines in § 2G2.2 invalid or illegitimate" and does not require the court "to vary from the § 2G2.2-based guidelines range."  *United States v. Cubero*, 754 F.3d 888, 900 (11th Cir. 2014); *see also United States v. Krumm*, No. 23-11774, 2024 WL 1298244, at *2 (11th Cir. Mar. 27, 2024) ("Insofar as Krumm implicitly challenges the guideline itself, based on the reports of the Sentencing Commission, we have explained that a defendant's argument that he should be granted a downward variance based on his challenge to the Guidelines

is a 'non-starter.'" (quoting *United States v. Carpenter*, 803 F.3d 1224, 1235 (11th Cir. 2015))). Congress has been put on notice of § 2G2.2's deficiencies, but it has conspicuously declined to act—probably because Congress "intended to punish child pornography offenders harshly and so declined to disagree with the Guidelines." *United States v. Brunette*, 387 F. App'x 912, 914 (11th Cir. 2010). The Court also notes that trial counsel argued for a downward variance based on the "cumulative or duplicitous" nature of § 2G2.2's enhancements. *See* Sentencing Tr., *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. Nov. 16, 2020), ECF No. 47 at 6:2–10. Mr. Skier was not obligated to raise every permutation of this objection at sentencing, especially when doing so would not have gotten his client any relief. *See Pinkney*, 876 F.3d at 1297.[8]

*Second*, Movant's plea was knowing and voluntary. Movant claims that he only pled guilty because he thought he could avoid a ten-year minimum mandatory and that counsel specifically advised him that "he was looking at 5-7 years, and at most 7-9 years with enhancements." Memo. at 37. He also accuses counsel of not reading the plea agreement at all. *See id.* at 38. This is patently false. Mr. Skier testified at the change of plea hearing that he met with Movant multiple times and that he extensively discussed the plea agreement and factual proffer with Movant. *See* Change of Plea Hr'g Tr., *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. Nov. 20, 2020), ECF No. 48 at 7:20–8:19. Movant agreed that Mr. Skier did all these things and confirmed that he himself had a "full and complete opportunity" to review the plea agreement and discuss it with Mr. Skier. *Id.* at 8:20–24, 11:18–12:3. The Court then discussed the applicability of the Sentencing Guidelines with Movant, who swore that he understood what the statutory maximums

---

[8]  Movant implies that counsel could have "negotiated a [FED. R. CRIM. P. 11(c)(1)(C)] plea to a lesser term," if he had adequately challenged the applicability of the guidelines. Memo. at 36. The Government, by and through the same Assistant United States Attorney who prosecuted the case, avers that he would have rejected such a request. Resp. at 49. Accordingly, Movant cannot show that he was prejudiced by counsel's failure to seek a Rule 11(c)(1)(C) plea. *See Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014).

were, that the parties' recommendations were not binding upon the Court, and that his sentence would be based on the Sentencing Guidelines—not any predictions or guesses his attorney might have made. *See id.* at 12:17–15:21. As the Court has already explained multiple times, Movant is bound by the sworn statements he made during his change of plea hearing. *See Blackledge*, 431 U.S. at 74; *see also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquy are true.").

*Third*, Movant was not prejudiced by counsel's failure to present more mitigating evidence during the sentencing hearing. Movant contends that counsel should "have presented the Court with [Movant's] strong family ties, low risk of recidivism, and history of community service" and discussed Movant's "successful career" and good reputation in the community. Memo. at 39–40. Mr. Skier moved for a downward variance based on Movant's lack of criminal history, his strong "family support," and his cooperation with the Government. *See* Sentencing Tr., *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. Nov. 16, 2020), ECF No. 47 at 10:9–11:11. Counsel was not "required to present all mitigation evidence even if the additional mitigation evidence would not have been incompatible with counsel's strategy." *Chandler*, 218 F.3d at 1319. Moreover, the Court would not have been persuaded to impose a lower sentence if counsel had presented additional mitigating evidence given the "deplorable" nature of the offense. *See* Sentencing Tr., *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. Nov. 16, 2020), ECF No. 47 at 21:9–22. Since additional mitigation would not "have affected the outcome of the proceeding," the Court rejects this argument. *Strickland*, 466 U.S. at 694.

*Fourth*, the Court properly applied all of § 2G2.2's enhancements. Movant argues that the Court should not have applied the enhancements of §§ 2G2.2(b)(2), (b)(3)(B), and (b)(4)(A). *See* Memo. at 42. The Court need not address Movant's arguments as to §§ 2G2.2(b)(3)(B) and

(b)(4)(A) because the Eleventh Circuit already held that this Court "correctly applied" both enhancements. *See Tassin*, 2022 WL 2458005, at *7.  The Eleventh Circuit held that the § 2G2.2(b)(3)(B) enhancement applied because Movant "admitted in his factual proffer that he would use the images he had to trade with other KiK users in the group" and that trading child pornography in exchange for other child pornography was "valuable consideration" as defined by § 2G2.2(b)(3)(B). *Id.* (citing *United States v. Bender*, 290 F.3d 1279, 1286 (11th Cir. 2002)).  The Eleventh Circuit also concluded that § 2G2.2(b)(4)(A) applied because Movant possessed "material that portrayed sadistic and masochistic conduct," i.e., "images and videos on [Movant's] phone [that] included adult men vaginally penetrating young girls." *Id.* (citing *United States v. Hall*, 312 F.3d 1250, 1263 (11th Cir. 2002)).  Counsel could not have been ineffective for failing to raise an argument that was expressly rejected by the Eleventh Circuit on direct appeal. *See United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal.  Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." (cleaned up)).

That leaves the application of § 2G2.2(b)(2).  This enhancement applies "if the material involved a prepubescent minor or a minor who had not attained the age of 12 years." *United States v. McRee*, 625 F. App'x 430, 433 (11th Cir. 2015).  Movant repeats his earlier argument that this enhancement does not apply to him because there is no evidence he "'intended to possess' material involving a prepubescent minor[.]"  Memo. at 42–43.  As the Court previously found, Movant admitted in his factual proffer that he knowingly possessed child pornography of prepubescent girls and that the Government could have proven this fact beyond a reasonable doubt. *See* Factual

Proffer, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. June 6, 2019), ECF No. 17 at 5–6. The Court properly applied the § 2G2.2(b)(2) enhancement.

*Fifth*, Movant's sentence is substantively reasonable, so counsel did not perform deficiently by failing to argue the § 3553(a) factors more effectively at sentencing.  The Eleventh Circuit considered Movant's claim that his sentence was "unreasonable in light of the 18 U.S.C. § 3553(a) factors and totality of the circumstances" and rejected it, agreeing with this Court that the "nature and circumstances" of the offense warranted a 240-month sentence despite Movant's personal history and characteristics.  *Tassin*, 2022 WL 2458005, at *8.  Movant cannot raise a claim that has already been rejected on direct appeal.  *See Nyhuis*, 211 F.3d at 1343.  The Court also would not have imposed a different sentence if counsel made different arguments during sentencing.  *See Strickland*, 466 U.S. at 694.  Since none of Movant's § 2G2.2 arguments have merit, trial counsel could not have been ineffective for failing to raise them.  *See Pinkney*, 876 F.3d at 1297.

### G.  Failure to Challenge Illegal Searches

Movant alleges that counsel was ineffective for failing to "recognize and challenge the admissibility of the fruits of multiple illegal searches."  Memo. at 49.  Movant identifies three such "illegal" searches: the "KiK data logs" that contained the IP address associated with Movant's username "Losinit2," *id.* at 50; the data from Movant's cell phone since it was obtained "only after compelling the passcode" from Movant, *id.* at 52; and eleven devices that were seized from Movant's home "without a warrant," *id.* at 53.  None of these searches were illegal so counsel was not ineffective for failing to file meritless motions to suppress.  *See Zakrzewski*, 455 F.3d at 1260.

*First*, the Eleventh Circuit has expressly held that "subscriber information disclosed during ordinary use of the internet, including internet protocol address and email address, falls within the third-party doctrine," so the Government did not need a search warrant before obtaining Movant's

IP address from KiK.  *United States v. Trader*, 981 F.3d 961, 968 (11th Cir. 2020).  Movant argues that the Supreme Court's decision in *Carpenter v. United States*, 585 U.S. 296 (2018) governs, *see* Memo. at 50–51, but the Eleventh Circuit concluded that *Carpenter*'s "narrow exception" to the third-party doctrine—which has only expressly been applied to the collection of historical cell-site location information—does not include IP addresses shared with a third-party as part of its normal course of business.  *See Trader*, 981 F.3d at 967–68; *see also Carpenter*, 585 U.S. at 311–12 (explaining that cell phone location records are unique because they "hold for many Americans the 'privacies of life'" and allow the Government to achieve "near perfect surveillance" (quoting *Riley v. California*, 573 U.S. 373, 403 (2014))).

*Second*, as discussed earlier, the Government legally searched Movant's phone.  Movant was not "in custody" when he gave his passcode to law enforcement, so the subsequent search of Movant's cell phone was accomplished because of Movant's voluntary statement.  *See Bowen*, 92 F.4th at 1334.  Even if Movant's Fifth Amendment rights were violated, law enforcement already had a search warrant for the phone.  *See* April 11, 2019 Search Warrant, [ECF No. 23-1], at 31. The phone's contents would have been admitted under the inevitable discovery doctrine.  *See McKathan*, 969 F.3d at 1232.

*Third*, Movant's argument that the Government searched "eleven devices . . . without a warrant," and that it "is reasonably likely that the evidence collected to convict petitioner, or significantly enhance his sentence, consists of both admissible as well as inadmissible evidence," is false for two reasons.  Memo. at 53–54.  First, the Government <u>did</u> obtain a warrant to search the "eleven devices" when they were discovered after the April 15, 2019 search.  *See* May 2, 2019 Search Warrant, [ECF No. 23-2], at 24–29.  Second, Movant's convictions and sentences were based on the images and videos found on Movant's cell phone and personal computer—not the

other eleven devices seized by the Government.  *See* Factual Proffer, *United States v. Tassin*, No.
19-CR-80064 (S.D. Fla. June 6, 2019), ECF No. 17 at 5–6.    Since there is no reasonable
probability that the information found on these eleven other devices had any effect on the
proceedings or Movant's decision to plead guilty, Movant could not have been prejudiced by the
lack of a motion to suppress.  *See Zakrzewski*, 455 F.3d at 1260.

### H.  Failures Regarding Indigency and Restitution

Movant alleges that counsel performed ineffectively for failing to "recognize [Movant's]
indigent status" and to "challenge [the] restitution amount."  Mot. at 4; Memo. at 4.  Movant does
not allege any facts showing how counsel failed in this regard or why these failures prejudiced
him, so he's failed to meet the heightened pleading standards of § 2255.  *See Beeman v. United
States*, 871 F.3d 1215, 1222 (11th Cir. 2017) ("A movant in a collateral attack upon his judgment
has the burden to allege and prove facts which would entitle him to relief." (quoting *Coon v. United
States*, 441 F.2d 279, 280 (5th Cir. 1971))).  In any event, Movant cannot use a § 2255 motion to
challenge matters relating to restitution since restitution has nothing to do with Movant's
"custodial punishment."  *Mamone v. United States*, 559 F.3d 1209, 1211 (11th Cir. 2009).

### I.  Failure to Raise Movant's Competency

Movant argues that counsel was ineffective for failing to *sua sponte* request a competency
evaluation.  Movant contends that counsel should have questioned Movant's competency because
he clearly "showed the signs of someone suffering from a panic attack" and that he had
undiagnosed depression and anxiety issues.  Memo. at 54–55.  Counsel does not have an obligation
to seek a competency evaluation unless he has a "'bona fide doubt' as to the defendant's
competency."  *Watts v. Singletary*, 87 F.3d 1282, 1287 (11th Cir. 1996); *see also Collier v. Fla.
Dep't of Corr. Sec'y*, 622 F. App'x 887, 887 (11th Cir. 2015) (explaining that counsel's

performance would be deficient if "there [was] a bona fide doubt" as to the defendant's competence).  The Eleventh Circuit already found that there was no "bona fide doubt" as to Movant's competence, and Movant himself agreed that he "had never been treated for any mental illness" and that he was fully informed and competent to plead guilty.  *Tassin*, 2022 WL 2458005, at *5–6 (citing *Medlock*, 12 F.3d at 187).  This Court is bound by the Eleventh Circuit's determination that there was no "bona fide doubt" as to Movant's competence, so counsel could not have been ineffective for failing to *sua sponte* request a competency evaluation.  *See Nyhuis*, 211 F.3d at 1343.[9]

## J.  **Cronic** *and Cumulative Error*

Movant has not shown the existence of either *Cronic* or cumulative error.  *Cronic* error occurs when defense counsel "entirely fails to subject the prosecution's face to meaningful adversarial testing" or when a defendant is "denied the right to counsel" during a critical stage of his criminal proceedings.  *United States v. Roy*, 855 F.3d 1133, 1144 (11th Cir. 2017) (en banc) (quoting *Cronic*, 466 U.S. at 659).  In contrast, cumulative error occurs when there is an "aggregation of non-reversible errors" that effectively deprive a defendant of his Sixth Amendment right to counsel.  *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012).  Since Movant has failed to advance even one arguably meritorious claim of ineffective assistance of trial counsel, he cannot show either that counsel's errors constructively deprived him of his Sixth Amendment right to counsel or that the accumulation of counsel's errors prejudiced him.  *See Chadwick v. Green*, 740 F.2d 897, 901 (11th Cir. 1984) (holding that *Cronic* only applies

---

[9]  Movant asserts that counsel was privy to more concerning behaviors, such as Movant's frequent bouts of crying and shaking uncontrollably and periods when he "blacked out" and had no memory of his meetings with counsel, and that counsel should have raised these issues with the Court.  *See* Memo. at 55.  Again, this allegation is refuted by the Eleventh Circuit's opinion and Movant's own sworn statements during his plea colloquy.  *See Tassin*, 2022 WL 2458005, at *5–6.

when "counsel's ineffectiveness [is] so egregious that the defendant was in effect denied any meaningful assistance at all"); *Morris*, 677 F.3d at 1132 ("[N]one of Morris's individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate.").

*     *     *

Movant accuses Mr. Skier of committing a panoply of errors when he represented Movant, but the Court finds that every one of these arguments is meritless and falls far short of *Strickland*'s standard for ineffective assistance of counsel claims.  Accordingly, for all the foregoing reasons, the Court **DENIES** Ground One.

### II.  Ground Two: Constructive Amendment of Indictment

In Ground Two, Movant alleges that Count 3 of the Indictment was constructively amended by his factual proffer.  Movant explains that the Indictment failed to include a "fifth element" that "the defendant intended to possess depictions of children who were prepubescent or under twelve years old."  Memo. at 60–61.  An indictment is constructively amended when "the essential elements of the offense contained in the indictment are altered . . . to broaden the possible bases of conviction beyond what is contained in the indictment."  *United States v. Feldman*, 931 F.3d 1245, 1260 (11th Cir. 2019) (cleaned up).  No constructive amendment occurred here.  The Court has already rejected Movant's argument that § 2252(a)(4)(B) has a "fifth element"; rather, the Court explained, § 2252(b)(2) merely modified two of § 2252(a)(4)(B)'s four elements.  Count 3 of the Indictment perfectly tracks the statutory language of §§ 2252(a)(4)(B) and (b)(2), the Movant's factual proffer hews to the same four elements, and both the Indictment and Factual Proffer specifically mentioned that Movant knowingly possessed visual depictions of prepubescent girls.  *See* Indictment, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. Apr. 23, 2019), ECF No. 6 at 2–3; Factual Proffer, *United States v. Tassin*, No. 19-CR-80064 (S.D. Fla. June 6, 2019),

ECF No. 17 at 5–6.  Since the language of both the Indictment and Factual Proffer tracked the appropriate statutory language, there could not have been a constructive amendment.  *See United States v. Seher*, 562 F.3d 1344, 1363 (11th Cir. 2009).  Ground Two is **DENIED**.

### III.   Ground Three: Ineffective Assistance of Appellate Counsel

Finally, in Ground Three, Movant asserts that appellate counsel was ineffective because he "failed to recognize and argue potentially meritorious claims" such as the "missing element and constructive amendment of Count 3, various due process violations, etc."  Memo. at 62.  Insofar as Movant is arguing that appellate counsel should have raised any of the issues discussed in the Motion and/or this Order, counsel could not have been ineffective for failing to brief these issues on appeal because they are meritless.  *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001).  However, if Movant is arguing that appellate counsel should have raised some other "potentially meritorious claim" that has not already been discussed, Movant fails to meet the pleading standards of § 2255.  Movant does not specify what these "potentially meritorious claims" are, why he thinks they were meritorious, and how he was prejudiced by appellate counsel's failure to raise them on direct appeal.  *See Beeman*, 871 F.3d at 1222 ("[A] § 2255 movant bears the burden to prove the claims in his § 2255 motion." (cleaned up)); *see also Mayle v. Felix*, 545 U.S. 644, 649 (2005) (holding that a defendant seeking collateral relief must "state the facts supporting each ground").  Ground Three is **DENIED**.

## EVIDENTIARY HEARING

No evidentiary hearing is warranted in this matter.  *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) ("[A] district court need not hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record.") (cleaned up).

## <u>CERTIFICATE OF APPEALABILITY</u>

A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition. Rather, to pursue an appeal, a postconviction movant must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a claim is "rejected . . . on the merits," a COA should only be granted if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing 28 U.S.C. § 2253(c)(2)). If, on the other hand, a claim is dismissed "on procedural grounds," a COA should issue only if: (1) "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and (2) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Here, reasonable jurists would not find the Court's assessment of Movant's claims to be debatable or wrong. Accordingly, a COA is denied and shall not issue.

## <u>CONCLUSION</u>

Having carefully reviewed the record and governing law, it is

**ORDERED AND ADJUDGED** that the Motion to Vacate, [ECF No. 1], is **DENIED**. All pending motions are **DENIED as moot**. Any demands for an evidentiary hearing are **DENIED**, and a certificate of appealability shall **NOT ISSUE**. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, on this 10th day of April, 2024.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**